IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| TYRONE GRAVES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v.  ) | CIVIL ACTION NO.: 2:14cv919-WC |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

# MEMORANDUM OPINION

**I.    INTRODUCTION**

Tyrone Graves ("Plaintiff") filed an application for disability insurance benefits under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401, *et seq*, on February 7, 2011. His application was denied at the initial administrative level. Plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ"). Following the hearing, the ALJ issued a decision finding Plaintiff not disabled from the alleged onset date of December 2, 2010, through December 31, 2011, the date last insured. Plaintiff appealed to the Appeals Council, which rejected his request for review of the ALJ's decision. The ALJ's decision consequently became the final decision of the Commissioner of Social Security ("Commissioner").[1]  *See Chester v. Bowen*, 792 F.2d

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub. L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

129, 131 (11th Cir. 1986). The case is now before the court for review under 42 U.S.C. § 405(g). Pursuant to 28 U.S.C. § 636(c), both parties have consented to the conduct of all proceedings and entry of a final judgment by the undersigned United States Magistrate Judge. Pl.'s Consent to Jurisdiction (Doc. 13); Def.'s Consent to Jurisdiction (Doc. 14). Based on the court's review of the record and the briefs of the parties, the court AFFIRMS the decision of the Commissioner.

## II.   STANDARD OF REVIEW

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).[2]

To make this determination, the Commissioner employs a five-step, sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920 (2011).

>   (1) Is the person presently unemployed?
>   (2) Is the person's impairment severe?
>   (3) Does the person's impairment meet or equal one of the specific
>   impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1 [the Listing of
>   Impairments]?
>   (4) Is the person unable to perform his or her former occupation?
>   (5) Is the person unable to perform any other work within the economy?

---

[2]   A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

2

> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

The burden of proof rests on a claimant through Step Four. *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004). A claimant establishes a *prima facie* case of qualifying disability once they have carried the burden of proof from Step One through Step Four. At Step Five, the burden shifts to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform. *Id*.

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"). *Id*. at 1238-39. The RFC is what the claimant is still able to do despite the claimant's impairments and is based on all relevant medical and other evidence. *Id*. It may contain both exertional and nonexertional limitations. *Id*. at 1242-43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant can perform. *Id*. at 1239. To do this, the ALJ can either use the Medical

---

[3] *McDaniel* is a supplemental security income (SSI) case. The same sequence applies to disability insurance benefits. Cases arising under Title XVI are appropriately cited as authority in Title II cases. *See, e.g.*, *Ware v. Schweiker*, 651 F.2d 408, 412 (5th Cir. 1981); *Smith v. Comm'r of Soc. Sec.*, 486 F.App'x 874, 876 n.* (11th Cir. 2012) ("The definition of disability and the test used to determine whether a person has a disability is the same for claims seeking disability insurance benefits or supplemental security income.").

Vocational Guidelines[4] ("grids") or call a vocational expert ("VE").  *Id*. at 1239-40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience.  Each factor can independently limit the number of jobs realistically available to an individual.  *Phillips*, 357 F.3d at 1240.  Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled."  *Id*.

The court's review of the Commissioner's decision is a limited one.  This court must find the Commissioner's decision conclusive if it is supported by substantial evidence.  42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997).  "Substantial evidence is more than a scintilla, but less than a preponderance.  It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) ("Even if the evidence preponderates against the Commissioner's findings, [a reviewing court] must affirm if the decision reached is supported by substantial evidence.").  A reviewing court may not look only to those parts of the record which support the decision of the ALJ, but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ.  *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings.   . . .  No

---

[4] *See* 20 C.F.R. pt. 404 subpt. P, app. 2.

> similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

## III. ADMINISTRATIVE PROCEEDINGS

Plaintiff was forty-three years old at the time of the hearing before the ALJ, and had completed his high school education in special education classes. Tr. 93-94. Following the administrative hearing, and employing the five-step process, the ALJ found at Step One that Plaintiff "did not engage in substantial gainful activity during the period from his alleged onset date of December 2, 2010, through his date last insured of December 31, 2011." Tr. 15. At Step Two, the ALJ found that Plaintiff suffers from the following severe impairments: "status post back injury, hypertension, obesity, diabetes, borderline intellectual functioning (BIF), and depression." *Id.* At Step Three, the ALJ found that, through his date last insured, Plaintiff "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments[.]" Tr. 15-16. Next, the ALJ articulated Plaintiff's RFC as follows:

> [T]hrough the date last insured, the claimant had the residual functional capacity to perform sedentary work . . . except that he must periodically alternate sitting and standing at 30 minute or greater intervals to relieve pain or discomfort; no climbing ladders, ropes, scaffolds, etc; occasional climbing ramps and stairs; occasional balancing, with use of hand held assistive device; no kneeling, crouching, or crawling; occasional stooping; must avoid concentrated exposure to extreme heat and cold; no exposure to dangerous machinery or unprotected heights; no work requiring walking on uneven terrain; and no operation of a motor vehicle. In addition, during a regularly scheduled workday, or the equivalent thereof, he can: A.

5

> Understand and remember short and simple instructions, but is unable to [do] so with detailed or complex instructions; B. Do simple, routine, repetitive tasks, but is unable to do so with detailed or complex tasks; C. Have no transactional contact with the general public; and D. Deal with changes in work place, if introduced occasionally and gradually. Due to a combination of medical conditions, associated severe pain, side effects of medication and mental impairments, he will miss 1 to 2 days of work per month. No math calculations required. No requirement to read instructions or write reports.

Tr. 21. Having consulted with a VE at the hearing, the ALJ concluded at Step Four that "[t]hrough the date last insured, the claimant was unable to perform any past relevant work[.]" Tr. 28. Finally, at Step Five, and based upon the testimony of the VE, the ALJ determined that "[t]hrough the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed." Tr. 29. The ALJ identified several representative occupations, including "small parts assembler," "stringing machine tender," and "carding machine operator." *Id.* Accordingly, the ALJ determined that Plaintiff "was not under a disability . . . at any time from December 2, 2010, the alleged onset date, through December 31, 2011, the date last insured[.]" Tr. 30.

## IV. PLAINTIFF'S CLAIM

Plaintiff presents one issue for the court to consider in its review of the Commissioner's decision: whether the ALJ "failed to adequately consider the effect of

plaintiff's medical impairments on the number of days of work that plaintiff would miss per month in the assessment of plaintiff's" RFC. Pl.'s Br. (Doc. 10) at 2.

## V. DISCUSSION

Plaintiff argues that the ALJ failed to consider whether his physical impairments might cause him to miss more than one to two days of work per month. *Id.* at 4. Plaintiff reasons that, because the ALJ explicitly credited the opinion of Dr. Estock that Plaintiff would be expected to miss one to two days of work per month due to his "psychiatric symptoms," the ALJ must not have properly considered all of Plaintiff's physical impairments when he found that Plaintiff's "combination of medical conditions, associated severe pain, side effects of medication and mental impairments" would cause Plaintiff to miss only one to two days of work per month. *Id.* Plaintiff therefore imputes to the ALJ some finding that his mental impairments alone would be expected to cause him to miss one to two days of work per month, and further contends that the "ALJ did not provide a sufficient explanation for his determination in the assessment of the RFC that plaintiff will miss 1 to 2 days of work per month[.]" *Id.* at 6. He maintains that, had the ALJ properly considered whether his physical impairments might cause him to miss additional days of work beyond the one to two attributable to his mental impairments, then "it may have affected the testimony of the vocational expert and otherwise potentially led to a favorable outcome." *Id.* at 7.

Plaintiff is correct that Dr. Estock, a State Agency medical consultant, authored a mental RFC assessment based upon his review of Plaintiff's medical records. In that assessment, Dr. Estock opined that "Claimant would likely miss 1-2 days/month due to psych symptoms." Tr. 375. Plaintiff is also correct that the ALJ gave considerable weight to Dr. Estock's opinion, explaining that his findings "are in substantial agreement" with those of Dr. Estock. Tr. 19. And, as noted above, in addition to any mental impairments or psychiatric conditions, the ALJ found several physical impairments afflicting Plaintiff, including "status post back injury, hypertension, obesity, [and] diabetes[.]" Tr. 15. However, it does not follow that the ALJ necessarily concluded that Plaintiff would be expected to miss one to two days per month due only to his mental impairments, or that the ALJ somehow failed to consider whether the numerous physical impairments he recognized necessarily would cause Plaintiff to miss additional days of work beyond that accounted for in the RFC. As a practical matter, it is clear from the ALJ's decision that the ALJ exhaustively reviewed the record and accounted for all of Plaintiff's physical conditions in his decision. *See* Tr. 22-28. Plaintiff does not point to any record evidence, whether objective medical records or opinion evidence, which was not discussed by the ALJ and which indicates either some physical condition not accounted for by the ALJ or that Plaintiff would be expected to miss additional days of work due to such condition. Moreover, as Defendant contends, it is evident that the ALJ accounted for Plaintiff's specific physical impairments in the RFC

when he found Plaintiff capable of only a reduced range of sedentary work with a sit-stand option.

In addition to Plaintiff's failure to point to any record evidence disputing the ALJ's findings which was not considered by the ALJ, Plaintiff's argument overlooks the symbiotic relationship between Plaintiff's physical and mental impairments. Dr. Kirkland diagnosed Plaintiff with "reactive depression secondary to medical problems." Tr. 349. In other words, and as Plaintiff reported to Dr. Kirkland, his "depression stems from [his] medical problems." Tr. 348. Even Plaintiff reported to Dr. Kirkland that he "would be able to work if all he was dealing [with] was the depression." Tr. 348. Thus, it is evident that the mental impairments which might be expected to cause Plaintiff to miss one to two days of work in fact stem from the physical impairments which the ALJ exhaustively reviewed and discussed in his opinion. The ALJ noted this finding in his decision, *see* Tr. 17-18, and furthermore gave "substantial weight to Dr. Kirkland's psychological assessment[.]" Tr. 26. Accordingly, it cannot fairly be argued that the ALJ failed to consider whether Plaintiff's physical impairments might cause him to miss more than one to two days of work per month. The ALJ plainly was aware of and considered Plaintiff's physical impairments and how they contributed to his mental impairments and rendered an RFC which both accommodated Plaintiff's physical impairments and recognized that Plaintiff's combined physical and mental impairments might be expected to cause him to miss one to two days of work per month. The ALJ's

decision is supported by substantial evidence in the record, and Plaintiff has pointed to no evidence in the record which indicates that he might miss more than one to two days per month and which the ALJ failed to consider in rendering his RFC. Accordingly, Plaintiff has failed to demonstrate reversible error in the ALJ's decision and it is due to be affirmed.

## VI. CONCLUSION

The court has carefully and independently reviewed the record and concludes that, for the reasons given above, the decision of the Commissioner is AFFIRMED. A separate judgment will issue.

Done this 25th day of August, 2015.

/s/ Wallace Capel, Jr.
UNITED STATES MAGISTRATE JUDGE